IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 9, 2003

## STATE OF TENNESSEE v. ABDULLAH MORRISON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 00-03636     Joseph P. Dailey, Judge**

_____

**No. W2002-00881-CCA-R3-CD  - Filed October 22, 2003**

_____

The defendant was convicted of first degree (premeditated) murder.  He now contends that the evidence of premeditation was insufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt.  We hold that the evidence was sufficient to support the jury's verdict.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

Robert Wilson Jones, District Public Defender; Michael Johnson and W. Mark Ward, Assistant Public Defenders, for the appellant, Abdullah Morrison.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; Jennifer Nichols and Steve Jones, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

On April 1, 2000, the Shelby County Grand Jury returned a one-count indictment charging the defendant, Abdullah Morrison, with first degree (premeditated) murder.  The case was tried before a jury, and the defendant was found guilty as charged and sentenced to life imprisonment.  The defendant filed a motion for new trial that was denied.  The defendant's notice of appeal was timely filed.  He contends on appeal that the evidence of premeditation was insufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt.

**Facts**

The following facts are not in dispute.  On August 30, 1999, Nathaniel Tyrone Bell (the victim) and his girlfriend, Samantha Black, were dropped off at the victim's grandmother's house.  At about the same time, the victim's grandmother, Mary Wright, and the victim's cousin, Loretha

Strong, were leaving the house to go to the store down the street. The victim and his girlfriend entered the house. Latasha Bell, the victim's sister, and the defendant were in the living room. Bell was listening to a CD player that was apparently owned by the defendant. The victim and the defendant got into an argument over the CD player. The defendant pushed the victim, followed by the victim's hitting the defendant. The two then fought each other for a few minutes, during which time a wall was broken. The two girls broke up the fight. The defendant left and walked to his grandmother's house next door.

A few minutes later, the defendant left his grandmother's house and went to the store down the street. In order to get to the store, he had to walk past the victim's house. By this time, the victim and several others were on the victim's front porch. The defendant returned from the store anywhere from thirty to forty-five minutes later. He approached the victim, who was still on the porch, and pulled out a gun. The victim was unarmed. The defendant shot the victim one time in the chest. The victim died near the scene a short time later.

The defendant turned around and walked away from the scene. He walked a couple of miles to a lake. The defendant threw the gun in the lake and caught a ride to the bus station. He purchased a ticket to Fort Worth, Texas, and left a short time later. The defendant returned to Memphis approximately ten days later and was arrested for the murder.

There was some dispute at trial concerning threats made by the defendant and whether or not he already had the gun with him that he used to kill the victim. Latasha Bell testified that when the defendant left the house immediately after the fight, he said that he was going to do something bad. Bell testified that the defendant returned to the house a few minutes after the fight and showed her a gun. She stated that the defendant told her that he was "gonna use this for [the victim]." He said that he was going to "hurt him bad." Bell testified that the defendant then left. She said that she and her cousin then walked to the store. As they left, the defendant came out of his grandmother's house and followed them to the store. As they were walking, Bell overheard the defendant saying that "he was fixin' to kill [the victim]."

Bell and her cousin returned from the store a short time later. She said that the defendant came back to the house about thirty minutes later. At that time, he had a different gun. He pulled out the gun and shot the victim. Bell testified that the defendant calmly walked away as if nothing had happened.

Loretha Strong testified that the defendant returned to his house after the fight was over. A few moments later, he came out of his house, and she heard him say "he gonna come back and blow [the victim's] ass off." The defendant walked toward the store, and he returned about thirty to forty-five minutes later. She stated that he shot the victim, then turned around and walked away like nothing had happened.

The defendant denied making any threats toward the victim. He also testified that he had the gun he used to shoot the victim in his possession the whole time. He stated that he did not intend to kill the victim.

The jury found the defendant guilty of first degree (premeditated) murder, and he was sentenced to life in prison.

**Analysis**

The defendant challenges the sufficiency of the convicting evidence. He contends the evidence is insufficient to prove that the murder was premeditated. The State argues that the evidence is sufficient. We agree with the State.

A jury conviction removes the presumption of innocence with which a defendant is cloaked and replaces it with one of guilt so that, on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Likewise, it is not the duty of this Court to revisit questions of witness credibility on appeal, that function being within the province of the trier of fact. State v. Holder, 15 S.W.3d 905, 911 (Tenn. 1999); State v. Burlison, 868 S.W.2d 713, 719 (Tenn. Crim. App. 1993). Instead, the defendant must establish that the evidence presented at trial was so deficient that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

First degree murder is defined as the "premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1). A person acts intentionally when "the person's conscious objective or desire [is] to engage in the conduct or cause the result." Id. A premeditated act is one "done after the exercise of reflection and judgment." Id. § 39-13-202(d). "Premeditation" means that the intent to kill must have been formed prior to the killing itself. It is not necessary, however, that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation. Id.

In Tennessee, a homicide, once established, is presumed to be second degree murder, and the State bears the burden of proving the element of premeditation in order to elevate the offense to first degree murder. See State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999), cert. denied, 531 U.S. 837 (2000). Factors which may be indicative of premeditation include "the use of a deadly weapon upon

an unarmed victim; the particular cruelty of the killing; declarations by the defendant of an intent to kill; evidence of procurement of a weapon; preparations before the killing for concealment of the crime; and calmness immediately after the killing." State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997).

It is undisputed that the defendant left the victim's house after the fight had ended. He then went back to his own home. The defendant left his house and walked to the store. He came back to the victim's house some thirty to forty-five minutes later, pulled out his gun, and shot the unarmed victim without sufficient provocation.

Two witnesses heard the defendant making threats that he was going to kill the victim. While the defendant denies making any threats, we can infer from the jury's verdict that they chose to credit the witnesses' testimony that he did threaten to kill the victim. The witnesses testified that the defendant calmly walked away after he shot the victim. These factors are clearly indicative of premeditation.

## Conclusion

Based on the record before us and viewing the evidence in the light most favorable to the State, we conclude that the evidence is sufficient to support the jury's finding the defendant guilty beyond a reasonable doubt of one count of first degree (premeditated) murder. Therefore, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE